O

# United States District Court
# Central District of California

| | |
|---|---|
| MAVERICK BANKCARD, INC., <br><br> Plaintiff, <br><br> v. <br><br> NURTURE SOLUTIONS, LLC et al., <br><br> Defendants. | Case № 2:22-cv-02875-ODW (JPRx) <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [43]; AND DISMISSING COMPLAINT WITH LEAVE TO AMEND** |

## I.     INTRODUCTION

Plaintiff Maverick Bankcard, Inc., moves for entry of default judgment against Defendant Marc Torre. (Mot. Default J. ("Mot."), ECF No. 43.) For the reasons discussed below, the Court **DENIES** Maverick's Motion.[1]

## II.     BACKGROUND[2]

On or about June 24, 2021, Maverick and Defendant Nurture Solutions, LLC entered into a written Merchant Account Agreement (the "Agreement"). (Compl. ¶ 12, ECF No. 1; *id.* Ex. A ("Agreement"), ECF No. 1-1.) Defendant Dane Kania signed and executed the Agreement on behalf of Nurture and also personally

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.
[2] The Court derives the background facts from Maverick's Complaint. (*See* Compl., ECF No. 1.)

guaranteed Nurture's obligations under the Agreement. (*Id.* ¶¶ 12–13; Agreement 3, 4.) Defendants Torre and Kania own and share a unity of interest with Nurture. (Compl. ¶¶ 5, 14.)

Under the terms of the Agreement, Maverick agreed to provide credit and debit card processing services for Nurture, and Nurture agreed to limit transaction volume, bear responsibility for chargebacks,[3] and pay all amounts due to Maverick. (*Id.* ¶ 16.) However, Nurture exceeded its transaction volume limit, incurred excessive chargebacks, and failed to pay Maverick amounts due. (*Id.* ¶ 17.) As a result, Maverick sustained more than $200,000 in damages. (*Id.* ¶ 20.)

On April 29, 2022, Maverick filed this action alleging a single cause of action for breach of contract against Torre, Kania, and Nurture. (*See generally* Compl.) In the Complaint, Maverick alleges that Torre is liable for Nurture's breach of the Agreement because he is Nurture's alter ego. (*Id.* ¶¶ 21, 26.)

Maverick served the Complaint on Torre, and Torre returned a waiver of service acknowledging receipt. (Waiver Serv., ECF No. 23.) However, Torre did not timely answer or respond to Maverick's Complaint. Accordingly, on Maverick's request, the Clerk entered Torre's default on August 3, 2022. (Req. Default, ECF No. 27; Default, ECF No. 28.)

On June 21, 2023, Maverick notified the Court that Maverick, Nurture, and Kania had reached an agreement. As such, the Court granted Maverick's request to dismiss Nurture and Kania. (Min. Order Dismissal, ECF No. 42.) Following the dismissal, Torre is the only Defendant remaining in this action. (*See id.*) Thus, Maverick now moves for entry of default judgment against Torre. (Mot.)

### III.     LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 55(b) authorizes a district court to grant default judgment after the Clerk enters default under Rule 55(a). However,

---

[3] A "chargeback" results when a merchant accepts a credit card payment that is later disputed by the credit card holder. (Decl. Benjamin Griefer ISO Mot. ("Griefer Decl.") ¶ 14, ECF No. 43-2.)

before a court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements in Rules 54(c) and 55, and Central District Civil Local Rules 55-1 and 55-2. Even when these procedural requirements are satisfied, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924–25 (9th Cir. 1986)). Instead, "[t]he district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Generally, after the Clerk enters a default, the defendant's liability is conclusively established, and the well-pleaded factual allegations in the plaintiff's complaint, except those pertaining to the amount of damages, "will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam).

## IV.  DISCUSSION

Default judgment is not appropriate here because, at a minimum, Maverick fails to: establish the Court may exercise personal jurisdiction over Torre; show the Servicemembers Civil Relief Act does not apply; or state a claim against Torre.

**A.  Jurisdictional Deficiencies**

Maverick fails to establish that the Court may exercise personal jurisdiction over Torre.

"In most circumstances, a defect in personal jurisdiction is a defense that may be asserted or waived by a party." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). However, when a court considers "whether to enter a default judgment, it may dismiss an action *sua sponte* for lack of personal jurisdiction." *Id.*; *see also Zheng v. Li*, No. 2:18-cv-8387-PA (JEMx), 2019 WL 1670751, at *2 (C.D. Cal. Mar. 1, 2019) ("[B]efore entering a default judgment, a court must consider whether it has personal jurisdiction over the defaulting defendant . . . .").

Consistent with due process, a court may exercise personal jurisdiction over a defendant if they "have certain minimum contacts with [the forum state] such that the

maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *Glencore Grain Rotterdam B.V. v. Shinvath Rai Hanarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). A non-resident defendant may be subject to either general or specific personal jurisdiction. *Fed. Deposit Ins. Corp. v. British-Am. Ins. Co.*, 828 F.2d 1439, 1442 (9th Cir. 1987).

General jurisdiction applies where a defendant's activities in the state are "substantial" or "continuous and systematic." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). For specific jurisdiction, the Ninth Circuit applies a three-prong test to determine whether a defendant's contacts with the forum state are sufficient to render the exercise of specific jurisdiction reasonable: (a) the nonresident defendant purposefully directs activities or consummates some transaction with the forum-state, or performs some act by which they personally avail themselves of the privilege of conducting activities in that forum; (b) the claim arises out of or relates to the defendant's forum-related activities; and (c) the exercise of jurisdiction comports with fair play and substantial justice, *i.e.*, it is reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The party asserting jurisdiction, here Maverick, bears the burden of satisfying the first two prongs of this test. *Id*.

Under the first prong's purposeful availment test, in contract cases like this, courts look to whether the defendant took actions "such as executing or performing a contract" demonstrating that it "purposefully avail[ed] [it]self of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Id.* That a defendant entered into a contract with a forum resident is not sufficient, alone, to establish purposeful availment. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Rather, to have purposefully availed itself of the privilege of doing business in the forum, a defendant must have "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sher*, 911 F.2d at 1362.

|   |   |
|---|---|
| 1 | The plaintiff bears the burden of demonstrating that the exercise of personal |
| 2 | jurisdiction is proper.  *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. |
| 3 | 1995).  The plaintiff cannot "simply rest on the bare allegations of its complaint," and |
| 4 | although well-pleaded allegations are taken as true, *Schwarzenegger*, 374 F.3d at 800, |
| 5 | "bare bones assertions of minimum contacts with the forum or legal conclusions |
| 6 | unsupported by specific factual allegations will not satisfy a plaintiff's pleading |
| 7 | burden," *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (internal quotation |
| 8 | marks omitted). |
| 9 | First, Maverick does not allege facts establishing that Torre's citizenship or |
| 10 | waiver of service subject him to general jurisdiction in California.  Maverick alleges |
| 11 | only that Torre's residence is unknown, (Compl. ¶ 3), and the record reflects that |
| 12 | Torre is a resident and citizen of Utah, (*see* Decl. Trevor R. Witt ISO OSC Resp. ¶ 8, |
| 13 | ECF No. 12 (attesting that Torre resides in Utah); Waiver Serv. (reflecting that Torre |
| 14 | executed the waiver of service in Utah).)  Thus, Torre is not subject to general |
| 15 | personal jurisdiction as a resident or citizen of California.  Additionally, Torre's |
| 16 | waiver of service alone does not establish this Court's personal jurisdiction over him. |
| 17 | *C.f.* Fed. R. Civ. P. 4(k)(1)(A) (providing that a waiver of service establishes personal |
| 18 | jurisdiction over a defendant "who is subject to the jurisdiction of a court of general |
| 19 | jurisdiction in the state where the district court is located."). |
| 20 | Next, Maverick has not alleged any facts to satisfy the specific jurisdiction |
| 21 | purposeful availment test.  Maverick alleges that Torre, Kania, and Nurture |
| 22 | "transacted sufficient business with the State of California such that it is proper for a |
| 23 | California-situated court to exercise both specific and general personal jurisdiction |
| 24 | over each of them."  (Compl. ¶ 11.)  This is a legal conclusion, unsupported by any |
| 25 | factual allegations, and does not suffice to establish any form of personal jurisdiction |
| 26 | over Torre.  *See Swartz*, 476 F.3d at 766.  The only apparent connection to California |
| 27 | in this case is Maverick's location.  (*See* Compl. ¶ 1.)  But Maverick's location in |
| 28 | California is also insufficient to establish personal jurisdiction over Torre.  *See Axiom* |

*Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1065, 1068 (9th Cir. 2017) ("[T]he minimum contacts analysis examines 'the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.'" (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014))).

As Maverick fails to establish personal jurisdiction over Torre, the Court **DENIES** the Motion for Default Judgment on this basis.

### B.    Procedural Deficiencies

Additionally, Maverick fails to satisfy the procedural requirements for entry of default judgment.

Local Rule 55-1 requires that the movant establish: (1) when and against which party default was entered; (2) the pleading to which default was entered; (3) whether the defaulting party is a minor or incompetent person; (4) that the Servicemembers Civil Relief Act ("SCRA") does not apply; and (5) that the defaulting party was properly served with notice if required under Rule 55(b)(2).

Regarding the fourth requirement, the SCRA protects servicemembers from default judgments entered in their absence while they are in military service. *See* 50 U.S.C. § 3931(b); C.D. Cal. L.R. 55-1. Accordingly, a plaintiff seeking entry of default judgment must file an affidavit stating whether the SCRA applies, i.e., whether the defendant is in military service. 50 U.S.C. § 3931(b)(1); C.D. Cal. L.R. 55-1(d). If the court is "unable to determine whether the defendant is in military service" based on the affidavits submitted, the court "may require the plaintiff to file a bond in an amount approved by the court" before entering judgment. 50 U.S.C. §3931(b)(3) ("If the defendant is later found to be in military service, the bond shall be available to indemnify the defendant . . . should the judgment be set aside in whole or in part.").

Maverick submits an affidavit stating it is "unable to determine whether Defendant Torre is a member of the U.S. military currently on active duty, or whether he is a U.S. citizen serving in the military of a U.S. ally in the prosecution of a war or military action." (Decl. Trevor R. Witt ISO Mot. ("Witt Decl.")¶ 12, ECF No. 43-3.)

Maverick requests that the Court make this determination for it. (*See* Mot. 5.) Based on the affidavits Maverick submits, the Court is unable to determine whether Torre is in military service such that the SCRA applies. Accordingly, before the Court will consider entry of default judgment against Torre, Maverick must establish either (i) that the SCRA does not apply, or (ii) that Maverick is willing and able to post a bond equal to the amount of damages it seeks from Torre.

At this time, as Maverick fails to establish that the SCRA does not apply, the Court **DENIES** the Motion on this basis.

### C.  Pleading Deficiencies

Finally, Maverick fails to state a claim against Torre in the Complaint.

In considering whether entry of default judgment is warranted, courts consider the "*Eitel* factors": (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a material factual dispute; (6) whether the default was due to excusable neglect, and (7) the strong policy favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Viet. Reform Party v. Viet Tan-Viet. Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (internal quotation marks omitted).

The second and third *Eitel* factors require a plaintiff to "state a claim on which the [plaintiff] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175 (alteration in original). Although well-pleaded allegations are established as true on default, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Maverick asserts a single cause of action against all Defendants for breach of contract. (Compl. ¶¶ 23–29.) Under California law,[4] to state a claim for breach of

---

[4] California law governs the Agreement. (Griefer Decl. Ex. 1 at 10, ¶ 38, ECF No. 43-2.)

7

contract, a plaintiff must establish the existence of a valid contract, the plaintiff's performance or excuse for nonperformance, defendant's breach, and resulting damages to the plaintiff. *See Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Here, Maverick alleges that Kania executed the Agreement on behalf of Nurture, Maverick performed, Nurture breached the Agreement by failing to limit transactions and failing to pay Maverick amounts due, and that Maverick has been damaged as a result of Nurture's breach. (Compl. ¶¶ 16–20.) These allegations may state a claim for breach of contract against *Nurture*, but they do not state a claim against *Torre*.

Rather than argue Torre is directly liable, Maverick alleges that Torre is liable for Nurture's breach of the Agreement because Torre is Nurture's alter ego. (Compl. ¶¶ 15, 21, 26.) A corporate entity may be found to be the alter ego of its members or shareholders, which allows a plaintiff to hold the members liable for the entity's harms. *Watson v. Commonwealth Ins. Co. of N.Y.*, 8 Cal. 2d 61, 68 (1936). To state a claim based on alter ego liability, a plaintiff must establish that (1) there is "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist," and (2) the failure to disregard the corporation would result in injustice. *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962).

In support of alter ego liability against Torre, Maverick alleges "there existed a unity of interest and ownership between" Nurture, Torre, and Kania, "such that any individuality or separateness between them has ceased." (*Id.* ¶ 14.) Maverick continues that "the activities and business of [Nurture] were carried out without the holding of directors' or shareholders' meetings, and/or without maintaining records or minutes of any such proceedings." (*Id.*) Lastly, Maverick alleges that Torre and Kania co-mingled their assets with Nurture and used Nurture to enter into contracts for their own personal benefit. (*Id.*)

These allegations do not establish that Torre should be held liable for Nurture's conduct as its alter ego. They consist of statements of law drawn directly from case authority and culminate with the legal conclusion of alter ego liability. These allegations could appear in any pleading alleging alter ego and are not specific to this case. The Court need not accept general statements of law or legal conclusions as true on default. Beyond these generic statements of alter ego law, Maverick offers no factual allegations specific to this case or these parties that would support the alleged "unity of interest," the nature of Nurture's business activities, or Torre's co-mingling of assets. Absent any supporting factual allegations, Maverick fails to state a claim to recover against Torre under a theory of alter ego liability.

Maverick raises a number of additional facts and arguments for Torre's liability in its Motion and supporting declarations. (*See generally* Mot; Griefer Decl.; Decl. Dane Kania ISO Mot., ECF No. 43-4.) However, these facts and arguments do not appear in the Complaint and therefore do not aid Maverick in pleading a claim against Torre. *See Alan Neuman Prods. v. Albright*, 862 F.2d 1388, 1392–93 (9th Cir.1988) (reversing default judgment for plaintiff on RICO claims because the complaint failed sufficiently to allege such claims), *cert. denied*, 493 U.S. 858 (1989).

Maverick's failure to state a claim against Torre on which it may recover is an additional reason the Court **DENIES** the Motion.[5]

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Maverick's Motion for Entry of Default Judgment against Torre. (ECF No. 43.)

---

[5] Further grounds for denial exist. For instance, Maverick submits evidence purportedly supporting its requested damages, but the printed spreadsheet is unwieldy, with miniscule print spanning dozens of pages. (*See* Griefer Decl. Ex. 2, ECF No. 43-2); *c.f.* C.D. Cal. L.R. 11-3.1. Maverick also offers minimal explanation of these documents or how they establish the relief demanded. *See Gibson v. Swift Transp. Co. Ariz.*, No. 5:20-cv-00318-ODW (SPx), 2021 WL 5069585, at *4 (C.D. Cal. May 20, 2021) ("Parties should not submit puzzle pieces as exhibits and expect the Court to build a mosaic on the courtroom walls to decipher whether [damages] should be granted.").

In light of the lack of personal jurisdiction and Maverick's failure to state a well-pleaded claim against Torre, the Court *sua sponte* **DISMISSES** the Complaint with leave to amend limited to curing the above-identified deficiencies. Amendments beyond the scope of this specified leave will not be accepted. Accordingly, the Court **VACATES** the default entered against Torre. (ECF No. 28.)

If Maverick elects to file an amended complaint, it must do so no later than **fourteen days** after the date of this Order. Maverick must serve the amended complaint on Torre within **twenty-one days** of filing it with the Court and file a proof of service with the Court immediately thereafter. If Maverick fails to timely file an amended complaint, the Court will close this case.

**IT IS SO ORDERED.**

December 11, 2023

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**